# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is entered into by and between James W. Cunningham, Chapter 7 Trustee ("Trustee"), on the one hand, and James Amos, Jr., Stephen A. Batman, William D. Gross, Ronald S. Ivy, Dennis McCuistion, Jacki Pick, Reagan Stewart, and Michael L. Whalen (collectively, "Defendants"), on the other hand (the Trustee and each of the Defendants a "Party," and, collectively, the "Parties") for the mutual considerations and purposes expressed below. This Agreement is to be effective on the latest date it is signed by a Party (the "Effective Date").

## RECITALS

**WHEREAS,** the National Center for Policy Analysis (the "NCPA") was a nonprofit economic think tank located in Dallas, Texas, which operated from 1982 until it dissolved on June 21, 2018.

**WHEREAS,** Defendants are former board members, directors, and/or officers of the NCPA.

**WHEREAS,** on October 16, 2019, Kevin Buchanan filed a lawsuit for breach of fiduciary duties against certain directors and officers of NCPA, including the Defendants, in Cause No. DC-19-16781 in the 44th Judicial District Court of Dallas County, Texas (the "Lawsuit").

**WHEREAS,** Allen B. West is also a defendant in the Lawsuit but is not a party to this Agreement.

**WHEREAS,** Kevin Buchanan did not initiate the Lawsuit on behalf of the NCPA, but on behalf of a judgment creditor, Fiscal Solutions, LLC, who purchased a judgment from a former NCPA employee, Richard W. Walker. Walker obtained the judgment in a breach of contract action against NCPA.

**WHEREAS,** certain of the Defendants moved to reopen NCPA's previously closed bankruptcy case in a Motion to Reopen Case (Doc. No. 21) on allegations that the claims asserted by Buchanan in the Lawsuit were never scheduled in NCPA's bankruptcy case, and, as a result, Buchanan lacked standing to assert those claims.

**WHEREAS,** on January 30, 2020, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), granted the Motion and entered an order reopening NCPA's previously closed bankruptcy case, holding that all claims for breach of fiduciary duty against NCPA's officers and directors, including all of the claims asserted in the Lawsuit, were property of NCPA's bankruptcy estate.

**WHEREAS,** on February 3, 2020, the Lawsuit was removed from the 44th Judicial District Court of Dallas County, Texas to the Bankruptcy Court.

**WHEREAS,** on March 5, 2020, the Trustee was substituted in as the only plaintiff in the Lawsuit.

**WHEREAS,** the Lawsuit alleges that Defendants, among other things: engaged the services of a public relations strategist; published false and defamatory statements about John Goodman; filed "a number of frivolous lawsuits;" sued Mike Baggett in an attempt to "embarrass, humiliate, and extort money;" hired a CFO who later allegedly embezzled between $600,000 and $1,000,000; failed to implement and observe "rigorous financial standards;" hired executives "without requiring full time commitments;" sold NCPA's online library for an unspecified amount, which is alleged to be "minimal;" "showed a blatant disregard for the wishes of donors" and "the interest of creditors;" failed to pay expenses; failed to "obtain the necessary authority" in "operations decisions" and in the "negotiation and sale of NCPA assets;" sold NCPA assets at "below market value;" "mismanaged" funds; and failed to share meeting minutes with members of the board.

**WHEREAS,** Defendants deny any wrongdoing as alleged in the Lawsuit.

**WHEREAS,** it is the desire of the Parties to settle all matters and issues in dispute between them, including all claims asserted in the Lawsuit (collectively, the "Dispute"), as set forth in this Agreement.

## AGREEMENTS

(1) **Payment.** Within ten (10) days of the date the Bankruptcy Court's order approving this settlement becomes a final, non-appealable order, Defendants shall pay to the Trustee a total of $65,000.00. The amount shall be payable as $8,000 from each of Defendants Gross and McCuistion and $8,166.67 from each of the remaining Defendants. If any of the Defendants fail to pay their respective share of the settlement payment (the "Defaulting Defendant"), any or all of the other Defendants may pay the Defaulting Defendant's share. If such a failure to pay occurs, the Defaulting Defendant expressly agrees that those Defendants who pay the Defaulting Defendant's share shall be entitled to contribution from the Defaulting Defendant. All Parties acknowledge and agree that none of the settlement funds are paid for purposes of exemplary or punitive damages because the circumstances for such damages are not present in this case.

(2) **Dismissal of Lawsuit.** Within five days of the Trustee's receipt of the payment provided in Paragraph (1) of this Agreement, the Trustee shall file an Agreed Order, substantially in the form attached hereto as Exhibit A, dismissing claims against the Defendants that are parties to this Agreement.

(3) **Release by Trustee.** The Trustee generally releases, remises, acquits, and forever discharges Defendants, as well as Defendants' principals, past or present officers, managers, directors, shareholders, employees, agents, third-party agents, attorneys, representatives, predecessors, successors, assigns, and affiliated or associated entities or individuals of whatever kind, of and from any and all past and present

claims, demands, obligations, actions, causes of action, rights, damages, expenses, and requests, known or unknown, that: (a) have or could have been asserted against Defendants in the Lawsuit; (b) relate in any way to the facts underlying the Dispute or Lawsuit with respect to Defendants; or (c) relate in any way to Defendants' respective roles with the NCPA.  To be clear, this release does not apply to, or affect in any way, any claims against Allen West, which are specifically reserved.

(4) **Release by Defendants of Other Defendants.**  The Defendants generally release, remise, acquit, and forever discharge the other Defendants, as well as the other Defendants' principals, past or present officers, managers, directors, shareholders, employees, agents, third-party agents, attorneys, representatives, predecessors, successors, assigns, and affiliated or associated entities or individuals of whatever kind, of and from any and all past and present, claims, demands, obligations, actions, causes of action, rights, damages, expenses, and requests, that have or could have been asserted against the other Defendants in the Lawsuit, or that in any way relate to the facts underlying the Dispute or Lawsuit.  The Defendants agree and covenant to not sue any of the other Defendants for any of the claims released in this Paragraph.  To be clear, this release does not affect any of the Defendants' rights to seek contribution from a Defaulting Defendant under the specific circumstances provided in Paragraph (1) of this Agreement.

(5) **Potential Claims Against Liability Insurance Carrier.**  The Parties understand and acknowledge that, before its dissolution, NCPA maintained a directors and officers liability insurance policy with Philadelphia Indemnity Insurance Company (the "Insurance Carrier").  The Insurance Carrier has rejected coverage for the allegations in the Lawsuit.  The Parties hereby agree to cooperate with each other in any lawsuit or other proceeding initiated against the Insurance Carrier and/or any other insurance carrier relating to coverage for the Lawsuit. Notwithstanding the above, nothing herein will be construed to require any Defendant to join any lawsuit against any insurance carrier as a party or retain any specific attorney to represent that Defendant in such litigation.

(6) **No Liability.**  The Parties acknowledge that this Agreement is not to be construed in any way as an admission of liability by any Party hereto.

(7) **Informed Consent.**  By entering into this Agreement, each Party represents that: (a) the terms of this Agreement are fully understood and voluntarily accepted by each Party; (b) it is relying on its own judgment in entering into this Agreement; and (c) it is not relying on any statement or representation by any other Party, other than those expressly set forth in the Agreement.

(8) **Ownership of Claims.**  Each Party represents and warrants to the other Party that it is the sole owner of the claims or causes of action released in this Agreement and it has not previously assigned or transferred any interest in such claims or causes of action to any other person or entity.

(9) **Duly Empowered.**  Each Party represents and warrants to the other Party that it is: (a) fully authorized to enter into this Agreement; and (b) competent to do so.

(10) **Successors in Interest.**  This Agreement is binding upon and will inure to the benefit of each Party's administrators, representatives, successors, and assigns.

(11) **Modification.**  The provisions of this Agreement may be changed, waived, modified, or varied only by written agreement of all the Parties.

(12) **Severability.**  In case any one or more of the provisions contained in this Agreement is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that holding will not affect any other provision of this Agreement, and this Agreement will be construed as if the invalid, illegal, or unenforceable provision had never been included.

(13) **Entire Agreement.**  This Agreement and the documents referred to herein contain the entire agreement between the Parties with regard to the matters set forth herein. This Agreement and the documents referred to herein shall supersede any prior written or oral agreements between the Parties concerning the subject matter herein.

(14) **Multiple Counterparts.**  This Agreement may be executed in multiple counterparts and with detachable signature pages each of which will be deemed an original and all of which taken together will constitute one and the same agreement. All signatures may be by facsimile or e-mail and need not be on the same counterpart.

(15) **Enforcement of this Agreement and Release.**  If any of the Parties hereto initiates litigation regarding enforcement or interpretation of this Agreement, all attorneys' fees and costs of the prevailing party shall be paid by the non-prevailing party.  This Agreement shall be construed in accordance with the laws of the State of Texas.

(16) **Interpretation.**  The Parties agree that they have reviewed this Agreement and that each fully understands and voluntarily accepts all the provisions contained in it. The Parties further agree that this Agreement is the product of good-faith, arms-length negotiations between the Parties, and that any rule of construction whereby ambiguities are to be resolved against the drafting party, shall not apply in the interpretation of this Agreement.

(17) **Headings.**  The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation.

**IN WITNESS WHEREOF,** the Parties have executed and delivered this Agreement as of the date of the last signature below:

**JAMES W. CUNNINGHAM, CHAPTER 7 TRUSTEE**

By: _____

Printed Name: _____

Dated: _____

**JAMES AMOS, JR.**

By: _____

Printed Name: _____

Dated: _____

**STEPHEN A. BATMAN**

By: _____

Printed Name: _____

Dated: _____

**WILLIAM D. GROSS**

By: _____

Printed Name: _____

Dated: _____

**RONALD S. IVY**

By: _____

Printed Name: _____

Dated: _____

**DENNIS McCUISTION**

By: _____

Printed Name: _____

Dated: _____


**JACKI PICK**

By: _____

Printed Name: _____

Dated: _____


**REAGAN STEWART**

By: _____

Printed Name: _____

Dated: _____


**MICHAEL L. WHALEN**

By: _____

Printed Name: _____

Dated: _____